**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 |
| MURPHY & DURIEU, L.P., | : | |
| | : | Case No. 17-22730 (RDD) |
| Debtor. | : | |

----------------------------------------------------------------x

---

### DEBTOR'S THIRD AMENDED PLAN OF LIQUIDATION

---

Dated: March 22, 2018

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Brendan M. Scott

*Counsel for Murphy & Durieu, L.P.,*
*Debtor and Debtor In Possession*

# TABLE OF CONTENTS

PAGE

ARTICLE I – INTRODUCTION ........................................................................................1

ARTICLE II – DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION
           OF TIME ..........................................................................................1

    2.01.     Definitions.................................................................................................1

    2.02.     Rules of Interpretation ..............................................................................8

    2.03.     Computation of Time................................................................................8

ARTICLE III – TREATMENT OF UNCLASSIFIED CLAIMS ..................................9

    3.01.     Administrative Expenses Claims ..............................................................9

    3.02.     Professional Fees ......................................................................................9

    3.03.     Statutory Fees............................................................................................9

    3.04.     Priority Tax Claims ...................................................................................9

ARTICLE IV – DESIGNATION OF CLASSES .........................................................10

    4.01.     Classification.............................................................................................10

ARTICLE V – TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ........10

    5.01.     Class 1: Pershing Setoff Claims..............................................................10

    5.02.     Class 2: General Unsecured Claims.........................................................10

    5.03.     Class 3: Secured Demand Note Claims ...................................................11

    5.04.     Class 4: Equity Interests...........................................................................12

    5.05.     Cramdown................................................................................................12

ARTICLE VI – PROVISIONS REGARDING RESOLUTION OF CLAIMS AND
           GOVERNING DISTRIBUTIONS UNDER THE PLAN ...................................12

    6.01.     Method of Distributions under the Plan....................................................12

      a.     General Provisions; Undeliverable Distributions .....................................12

i

    b.      Minimum Distributions.................................................................................13

    c.      Unclaimed Property.....................................................................................13

    d.      Manner of Cash Payments under the Plan...................................................13

    e.      Time Bar to Cash Payments by Check........................................................13

    f.      Limitations on Funding of Disputed Claim Reserve...................................13

    g.      Compliance with Tax Requirements.............................................................14

    h.      No Payments of Fractional Dollars..............................................................14

    i.      Setoff and Recoupment...............................................................................14

6.02.      Objections to Claims.............................................................................................14

6.03.      Disputed Claim Reserve.......................................................................................14

6.04.      Claims Estimation.................................................................................................15

6.05.      Disallowance of Claims........................................................................................15

6.06.      Adjustment without Objection..............................................................................16

ARTICLE VII – EXECUTORY CONTRACTS AND UNEXPIRED LEASES.........................16

7.01.      Assumption or Rejection of Executory Contracts and Unexpired Leases.............16

7.02.      Claims Based on Rejection of Executory Contracts or Unexpired Leases...............16

7.03.      Post-Petition Contracts and Leases.......................................................................16

ARTICLE VIII – MEANS FOR IMPLEMENTATION AND EFFECT OF
               CONFIRMATION OF PLAN.........................................................................16

8.01.      Plan Administrator.................................................................................................16

    a.      Plan Administrator Agreement.....................................................................16

    b.      Appointment................................................................................................17

8.02.      Vesting of Assets...................................................................................................17

8.03.      Plan Administrator Reserve...................................................................................17

8.04.      Professional Fee Reserve......................................................................................18

8.05.      Tax Reserve...........................................................................................................18

8.06.      Secured Demand Note Fund..................................................................................18

8.07.      Corporate Existence of the Debtor........................................................................18

ii

8.09.     Insurance Preservation ...................................................................18

8.10.     Preservation of Setoff Rights .........................................................19

ARTICLE IX – EFFECTIVENESS OF THE PLAN ....................................19

9.01.     Conditions Precedent to Confirmation ..........................................19

9.02.     Conditions Precedent to Effectiveness...........................................19

ARTICLE X – RELEASE; INJUNCTIONS AND RELATED PROVISIONS ...........20

10.01.     *intentionally left blank* ...............................................................20

10.02.     Releases by the Debtor....................................................................20

    a.     Releases by the Debtor....................................................................20
    b.     Exculpation and Limitation of Liability .........................................20

10.03.     Cary May, Janine May Scharff, Kristin May Galvin..................20

10.04.     Entry of Confirmation Order ..........................................................20

10.05.     Injunction .......................................................................................21

10.06.     Effective Date .................................................................................21

10.07.     Release of Liens...............................................................................21

10.08.     Preservation of Causes of Action...................................................21

    a.     Vesting of Causes of Action ...........................................................21
    b.     Preservation of all Retained Causes of Action not Expressly Settled or
           Released ..........................................................................................22

ARTICLE XI – RETENTION OF JURISDICTION ....................................23

11.01.     Bankruptcy Court Jurisdiction .......................................................23

ARTICLE XII – MISCELLANEOUS PROVISIONS ..................................24

12.01.     Effectuating Documents and Further Transactions........................24

12.02.     Aid in Implementation of Plan.......................................................24

12.03.   Post-Effective Date Fees and Expenses ................................................................24

12.04.   Post-Effective Date Statutory Fees ..........................................................................24

12.05.   Amendment or Modification of the Plan ..................................................................25

12.06.   Severability ..............................................................................................................25

12.07.   Revocation or Withdrawal of the Plan .....................................................................25

12.08.   Allocation of Plan Distributions Between Principal and Interest .............................25

12.09.   Binding Effect ..........................................................................................................25

12.10.   Reservation of Rights ...............................................................................................25

12.11.   Section 1146 Exemption ...........................................................................................26

12.12.   Section 1125(e) Good Faith Compliance .................................................................26

12.13.   Successors and Assigns ............................................................................................26

12.14.   Preservation of Records ...........................................................................................26

12.15.   Notices .....................................................................................................................26

12.16.   Governing Law .........................................................................................................19

# ARTICLE I
## INTRODUCTION

Pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Murphy & Durieu, L.P. (the "Debtor") proposes the following First Amended Plan of Liquidation (the "Plan").

The Plan is a liquidating plan. In other words, the Plan proposed by the Debtor provides for the liquidation or abandonment of any assets or claims of the Debtor and the distribution of funds to the Debtor's creditors. Reference is made to the First Amended Disclosure Statement for Debtor's Plan of Liquidation, dated February 23, 2018 (together with all exhibits attached thereto or referenced therein, as the same may be amended, modified or supplemented the "Disclosure Statement") for a discussion of the Debtor's history, business, assets and liabilities, and for a summary and analysis of the Plan.

# ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME

2.01    **Definitions**. As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

"**Administrative Expense Claim**" means any right to payment constituting a cost or expense of the Chapter 11 Case under §§ 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estate, any actual and necessary costs and expenses of liquidating the business and assets of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business or liquidation of its assets, any Professional Fees approved by order of the Bankruptcy Court, and any fees or charges assessed against the Estate under § 1930 of Title 28 of the United States Code.

"**Administrative Expense Claim Bar Date**" shall have the meaning set forth in § 3.01 of this Plan.

"**Affiliate**" has the meaning set forth in § 101(2) of the Bankruptcy Code.

"**Allowed**" means, with respect to any Claim, the Claim or portion thereof that is not a Disputed Claim or Disallowed Claim: (a) for which a Proof of Claim was timely filed with the Bankruptcy Court, and as to which no Objection is interposed; (b) for which no Proof of Claim thereof was filed, to the extent that such Claim has been listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent as to liability, and as to which no Objection is interposed; (c) which arises from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and is allowed in accordance with § 502(h) of the Bankruptcy Code; (d) which is allowed under the Plan; or (e) which is allowed by a Final Order.

"**Applicable Federal Rate**" means that mid-term adjusted federal long-term rate published by the Internal Revenue Service under Section 382 of the Internal Revenue Code for August 2017 of 1.45% per annum.

"**Avoidance Claims**" means any and all rights, claims, causes of action or rights to avoid any transfer or incurrence of debt that may be asserted or recovered by the Debtor in its capacity as debtor-in-possession pursuant to Chapter 5 of the Bankruptcy Code.

"**Bankruptcy Code**" means title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York, the Local Rules of Civil Practice and Procedure of the United States District Court for the Southern District of New York, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

"**Business Day**" means any day other than a Saturday, Sunday or any legal holiday under federal law or the law of the State of New York.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" means all claims, actions, causes of action, choses in action, Avoidance Claims, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims of the Debtor, and/or its Estate that are or may be pending on the Effective Date or instituted by the Plan Administrator after the Effective Date against any entity, based in law or equity, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

"**Chapter 11 Case**" or "**Case**" means the Debtor's case under Chapter 11 of the Bankruptcy Code, Case No. 17-22730 (RDD) on the docket of the Bankruptcy Court.

"**Chief Restructuring Officer**" means Joshua Rizack in his capacity as Chief Restructuring Officer of the Debtor.

"**Claim**" has the meaning set forth in § 101(5) of the Bankruptcy Code.

"**Claims Objection Bar Date**" means the bar date for objecting to proofs of claim, which shall be one-hundred eighty (180) days after the Effective Date; *provided*, *however*, that the Plan Administrator may seek by motion one or more additional extensions of this date from the Bankruptcy Court.

"**Collateral**" means any property or interest in property of the Debtor's Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

"**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

"**Creditor**" has the meaning ascribed to such term in § 101(10) of the Bankruptcy Code.

"**DeAngelis**" mean Louis DeAngelis, a holder of a Secured Demand Note.

"**Debtor**" has the meaning set forth in Article I of this Plan.

"**Disallowed**" means, when referring to a Claim, a Claim or any portion thereof, that (a) has been disallowed or expunged, in whole or in part, by a Final Order; (b) has been withdrawn by agreement between the Debtor and the Holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the Holder thereof; (d) is listed in the Schedules as zero or as disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been timely filed or deemed timely filed pursuant to the Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court; (e) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any Proof of Claim; or (f) is evidenced by a Proof of Claim which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court, but as to which such Proof of Claim was not timely or properly filed.  In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

"**Disclosure Statement**" means the written disclosure statement or any supplements thereto (including the Plan Supplement and all schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time, all as approved by an order of the Bankruptcy Court pursuant to §§ 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3017.

"**Disclosure Statement Order**" means the Order entered by the Bankruptcy Court approving the Disclosure Statement as containing, among other things, "adequate information" as required by Section 1125 of the Bankruptcy Code and solicitation procedures related thereto.

"**Disputed**" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (b) as to which a Debtor has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by a Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

"**Disputed Claim Reserve**" means the reserve funds created pursuant to Article 6.03 of the Plan.

"**Distribution**" means any payment of Cash called for under the Plan.

"**Effective Date**" means the first day after the conditions to effectiveness of the Plan provided in Article 9.02 hereof have been satisfied.

"**Entity**" has the meaning ascribed to such term in § 101(15) of the Bankruptcy Code.

"**Equity Interests**" means any ownership interests in and with respect to the Debtor.

"**Estate**" means the bankruptcy estate in this Chapter 11 Case of the Debtor.

"**Exculpated Claim**" means any Claim related to any act or omission in connection with, relating to, or arising out of the Debtor's liquidation, the Chapter 11 Case, formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Plan Supplement, or any other agreement or document created or entered into in connection with the Disclosure Statement or Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration, consummation, and implementation of the Plan, the Distribution of property under the Plan, the settlement of Claims, or the negotiation of, or any transaction contemplated by, the Plan or Disclosure Statement, or in furtherance thereof.

"**Exculpated Parties**" means, collectively, each of the following in their respective capacities as such: (i) the Debtor, (ii) Murphy, (iii) the Chief Restructuring Officer, and (iv) with respect to each of the above-named Entities described in subsections (i) and (ii), such Entity's respective predecessors, successors and assigns and current officers, directors, managers, shareholders, members, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals that acted in such capacity during the pendency of this Case.  Notwithstanding anything else herein to the contrary, Murphy shall not be an Exculpated Party with respect to the Mays.

"**Executory Contract**" means any contract to which the Debtor is a party that is subject to assumption or rejection under §§ 365 or 1123 of the Bankruptcy Code.

"**Final Distribution**" means the final distribution, if any, to be made by the Plan Administrator in accordance with the terms of this Plan.

"**Final Order**" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for reargument or rehearing will then be pending or as to which any right to appeal, petition for certiorari, reargument, or rehearing will have been waived in writing, in form and substance, satisfactory to the Debtor or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court will have been determined by the highest court to which such order was appealed, or certiorari reargument or rehearing will have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing will have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed with respect to such order will not cause such order not to be a Final Order.

"**General Bar Date**" means September 25, 2017 in accordance with the Order Establishing

Deadline for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof [Docket Entry No. 30].

"**Governmental Bar Date**" means November 12, 2017 in accordance with the Order Establishing Deadline for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof [Docket Entry No. 30].

"**General Unsecured Claim**" means any Claim other than a Priority Tax Claim, a Professional Fees claim, the Pershing Setoff Claim, a Secured Demand Note Claim, an Equity Interest or an Administrative Expense Claim.

"**Holder**" means the holder of any Claim or Equity Interest.

"**Impaired**" means, when used in reference to a Claim or Equity Interest or a class thereof, a Claim or Equity Interest or class thereof that is impaired within the meaning of Bankruptcy Code § 1124.

"**Initial Distribution**" means the initial distribution to be made by the Plan Administrator in accordance with the terms of this Plan.

"**Janine May Sharff Securities**" means those certain securities held by Pershing as of the Petition Date in the name of the Debtor, for the benefit Janine May Sharff, in the accounts numbered XXX-897777 and XXX-898908, or the proceeds thereof if liquidated at any point by order of the Bankruptcy Court or otherwise.

"**Kristen May Galvin Securities**" means those certain securities held by Pershing as of the Petition Date in the name of the Debtor, for the benefit Kristen May Galvin, in the accounts numbered XXX-898874 and XXX-898916, or the proceeds thereof if liquidated at any point by order of the Bankruptcy Court or otherwise.

"**Lien**" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

"**Maximum Amount**" means, with respect to any Disputed Claim: (a) the amount agreed to by the Debtor and the Holder of such Claim; (b) the amount, if any, estimated or determined by the Bankruptcy Court in accordance with Section 502(c) or 503(b) of the Code; or (c) absent any such agreement, estimation or determination, the liquidated amount set forth in the proof of claim filed by the holder of such Claim, or if no amount is so set forth, the amount estimated by the Debtor.

"**May Security**" or "**May Securities**" means the Janine May Sharff Securities and the Kristen May Galvin Securities.

"**Mays**" means Jeanine May Scharff and Kristin May Galvin.

"**Murphy**" means Richard Murphy, the Debtor's General Partner.

"**Murphy Claim**" means any claim that Murphy has or claims to have against the Debtor, including any claim based on the alleged $575,000 provided to the Debtor by Murphy prior to

the Petition Date.

"**Objection**" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim), or Equity Interest, other than a Claim or an Equity Interest that is Allowed.

"**Petition Date**" means May 16, 2017, the date on which the Debtor commenced the Chapter 11 Case by filing a voluntary petition.

"**Pershing**" means Pershing LLC, the Debtor's former clearing agent.

"**Pershing Accounts**" means the accounts in the Debtor's name at Pershing with account numbers ending in 777, 874, 908, 916, 940, 218, 366, 319, 681, 168, 341, 679, 007 and 333.

"**Pershing Setoff Claim**" means the unimpaired Class 1 Claim of Pershing permitting its setoff of any cash held in any Pershing Accounts against any negative balances in any Pershing Accounts.

"**Plan**" means this Chapter 11 plan, either in its present form or as the same may be altered, amended or modified from time to time.

"**Plan Administrator**" means the person who shall have the rights and obligations as set forth in the Plan Administrator Agreement.  The initial Plan Administrator shall be Joshua Rizack.

"**Plan Administrator Agreement**" means that certain agreement between the Plan Administrator and the Debtor pursuant to which the Plan Administrator shall implement the terms of the Plan by, among other things, making certain Distributions under the Plan.

"**Plan Administrator Reserve**" means the reserve account in the amount of $40,000 to be created by the Plan Administrator in accordance with Article 8.03 of this Plan.

"**Plan Supplement**" means that certain contemplated supplement or supplements to the Plan containing such additional documents and agreements as are necessary to bring the Plan effective, to be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date, including, but not limited to, the Plan Administrator Agreement, and any schedules to the Plan.

"**Plan Supplement Filing Date**" means the date on which the Plan Supplement shall be filed with the Bankruptcy Court, which date shall be at least seven (7) days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice.

"**Pournaras**" means Thomas Pournaras, holder of a Secured Demand Note.

"**Pournaras Excess Collateral Account**" means that certain account in the Debtor's name held at Pershing with account number ending in 940.

6

"**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in §§ 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professionals**" means the professionals retained by the Debtor under Bankruptcy Code §§ 327 or 1103 and to be compensated pursuant to Bankruptcy Code §§ 327, 328, 330, 331, or 503(b)(2).

"**Professional Fees**" shall have the meaning set forth in Article 3.02 of this Plan.

"**Professional Fee Reserve**" means the reserve in the amount of $225,000 to be created by the Plan Administrator in accordance with Article 8.04 of this Plan.

"**Proof of Claim**" means a proof of claim filed in connection with the Chapter 11 Case.

"**Record Date**" means the record date for determining the entitlement of Holders of Claims to receive Distributions under the Plan on account of Allowed Claims.  The Record Date shall be the date on which the Disclosure Statement Order is entered.

"**Releasees**" means, collectively, the Debtor, officers and directors of the Debtor that served in such capacity at any time from and after the Petition Date, including but not limited to Murphy, The Rising Group Consulting, Inc., Joshua Rizack, in his capacity as the Debtor's Chief Restructuring Officer, Janine May Scharff and Kristen May Galvin, and each of their respective Representatives.  Notwithstanding anything else herein to the contrary, neither Murphy nor any of his family members shall be a Releasee with respect to the Mays.

"**Releasing Parties**" means, collectively all holders of Claims who affirmatively vote to accept the Plan and their Representatives.

"**Representatives**" means, with regard to any Entity, its current and former officers, directors, employees, shareholders, members, managers, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, members and professionals), solely in their representative capacity.

"**Retained Causes of Action**" means all Causes of Action other than those Causes of Action that are abandoned or released, or otherwise pursuant to Article 10.08 of this Plan.

"**Ricciardi**" means Richard Ricciardi, a holder of a Secured Demand Note.

"**Riccio**" means Anthony Riccio, a holder of a Secured Demand Note.

"**Schedules**" mean the Schedules of Assets and Liabilities, the List of Holders of Interests, and the Statement of Financial Affairs filed by the Debtor, as may be amended.

"**Secured Claim**" means any Claim, to the extent reflected in the Schedules or a Proof of Claim as being secured and properly perfected, which is secured by a timely perfected Lien on Collateral, to the extent of the value of the Estate's interest in such Collateral, as determined as of the relevant determination date.

"**Secured Demand Note(s)**" means those certain Secured Demand Notes by and between the Debtor, as borrower on the one hand and Janine May Scharff, Kristin May Galvin, Pournaras, DeAngelis, Ricciardi and Riccio, respectively, as lenders on the other hand.

"**Secured Demand Note Claims**" means the claims by holders of Secured Demand Notes for the principal amount of such Secured Demand Note.  By the terms of the Secured Demand Notes, Secured Demand Note Claims are subordinated to all other claims against the Debtor.

"**Secured Demand Note Distribution**" means the distribution to be made by the Plan Administrator from the Secured Demand Note Fund to Holders of Class 3 Claims in accordance with the terms of this Plan.

"**Secured Demand Note Fund**" means a fund account in the amount of $50,000 to be created by the Plan Administrator in accordance with the terms of Article 8.06 of this Plan.

"**Tax Reserve**" the reserve account in the amount of $150,000 to be created by the Plan Administrator in accordance with Article 8.05 of this Plan.

"**Treasury Rate**" means the yield on five-year United States Treasury Notes as published by the Wall Street Journal on the Effective Date.

"**Unexpired Lease**" means a lease of real or personal property to which the Debtor is a party that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

"**Unimpaired**" means, when used in reference to a Claim or Equity Interest or a class thereof, a Claim or Equity Interest or a class thereof that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

"**Voting Deadline**" means March 21, 2018, at 4:00 p.m. prevailing Eastern Time.

2.02   **Rules of Interpretation**.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural will include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender will include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  The rules of construction contained in § 102 of the Bankruptcy Code will apply to the construction of the Plan.  All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.  A term used herein that is not defined herein, but that is used in the Bankruptcy Code, will have the meaning ascribed to that term in the Bankruptcy Code.  The headings in the Plan are for convenience of reference only and will not limit or otherwise affect the provisions of the Plan.

2.03   **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") shall apply.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

3.01 **Administrative Expense Claims**. The deadline for filing an Administrative Expense Claim (other than post-petition professional fees) shall be thirty (30) days after the Effective Date (the "Administrative Expense Claim Bar Date"). Except to the extent any entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash from the Plan Administrator in an amount equal to such Allowed Claim by the later of either (i) the Effective Date or as soon thereafter as is reasonably practicable, or (ii) the date that is 14 days after the Administrative Expense Claim is Allowed.

3.02 **Professional Fees**. All Professionals seeking payment of professional fees or reimbursement of expenses incurred through and including the Effective Date under § 503(b)(2), (3), or (4) of the Bankruptcy Code ("Professional Fees") shall file their respective final applications on or before the date that is forty-five (45) days after the Effective Date. The Professional Fees shall be paid by the Plan Administrator out of the Professional Fee Reserve as and when they are Allowed.

3.03 **Statutory Fees**. On the Effective Date, the Debtor shall make all payments required to be paid to the U.S. Trustee pursuant to § 1930 of Title 28 of the United States Code plus any applicable interest pursuant to § 3717 of Title 31 of the United States Code. All fees and interest payable pursuant to § 1930 of Title 28 of the United States Code and § 3717 of Title 31 of the United States Code after the Effective Date shall be paid by the Plan Administrator on a quarterly basis until the Chapter 11 Case is closed, converted, or dismissed.

3.04 **Priority Tax Claims**. Except to the extent that a Holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, Cash in an amount of such Holder's Allowed Claim on the Effective Date. Under the Plan, Holders of Allowed Priority Tax Claims against the Debtor shall not be entitled to any payments on account of any post Petition Date interest or penalty with respect to or in connection with an Allowed Priority Tax Claim. Any such Claim or demand for any post Petition Date interest or penalty will be discharged upon the entry of the Confirmation Order by Bankruptcy Code § 1141(d)(1), and the Allowed Priority Tax Claim Holder shall not assess or attempt to collect such accrued interest or penalty from the Debtor, the Plan Administrator or the Debtor's property. The Debtor has estimated the Priority Tax Claims are not more than $150,000.00.

## ARTICLE IV
## DESIGNATION OF CLASSES

4.01    **Classification**.    Claims and Equity Interests are classified for all purposes, including voting, confirmation, and Distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Pershing Setoff Claims | Unimpaired | No |
| Class 2 | General Unsecured Claims | Impaired | Yes |
| Class 3 | Secured Demand Note Claims | Impaired | Yes |
| Class 4 | Equity Interests | Impaired | No |

## ARTICLE V
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

5.01    **Class 1: Pershing Setoff Claims.**

Pershing is the only Holder of Class 1 Pershing Setoff Claims.  On the Effective Date, Pershing shall be permitted to set-off any negative balances in any of the Pershing Accounts against cash and or cash equivalents held in other Pershing Accounts on a dollar-for-dollar basis. Pershing shall not be entitled to any other Distribution under this Plan.  The cash and cash equivalents used to affect the setoff shall be drawn from the Pershing Accounts on a pro-rata basis.  The Debtor estimates that after such set-off, the cash remaining in the Pershing Accounts will be approximately $678,000.

Immediately following the setoff as set forth in this Article 5.01, Pershing shall (A) turn over to the Debtor the remaining cash in the Pershing Accounts, to be distributed by the Debtor in accordance with the terms hereof, (B) deposit the Janine May Sharff Securities into a brokerage account as directed by Janine May Sharff, in accordance with Article 5.02 hereof, and (C) deposit the Kristen May Galvin Securities into a brokerage account as directed by Kristen May Galvin, in accordance with Article 5.02 hereof.

Class 1 is Unimpaired.  The Holder of the Class 1 Claim is therefore deemed to vote in favor of the Plan.

5.02    **Class 2: General Unsecured Claims.**

Holders of Allowed Class 2 General Unsecured Claims will be paid an Initial Distribution on the Effective Date equal to their pro-rata share (based on percentage of total Class 2 Claims) of all remaining Cash and securities after payment of Administrative Expense Claims and Priority Tax Claims, establishing the Plan Administrator Reserve, the Professional

10

Fee Reserve, the Tax Reserve, and the Secured Demand Note Fund, and after effecting the Pershing Setoff Claim.  The distribution to the Mays pursuant to this Article 5.02 shall be satisfied first by Pershing distributing all Janine May Sharff Securities to Janine May Sharff and all Kristen May Galvin Securities to Kristen May Galvin in accordance with Article 5.01, with the remainder of such distributions, if any, to be in Cash.

The amount of Janine May Scharff's Allowed Class 2 Claim shall be equal to the amount of Cash in the Pershing Accounts ending in 777 ($288,676.41, as of December 31, 2017) and 908 ($887,802.81, as of December 31, 2017) on the date of the Initial Distribution, less the face value of her Secured Demand Note ($125,000.00), plus the value of the Janine May Sharff Securities on the date of an Initial Distribution as ascribed by Pershing ($1,740,443.86, as of December 31, 2017).

The amount of Kristin May Galvin's Allowed Class 2 Claim shall be equal to the amount of Cash in the Pershing Accounts ending in 874 ($219,854.37, as of December 31, 2017) and 916 ($168,462.03, as of December 31, 2017) on the date of the Initial Distribution, less the face value of her Secured Demand Note ($125,000.00), plus the value of the Kristen May Galvin Securities on the date of an Initial Distribution as ascribed by Pershing ($802,163.77, as of December 31, 2017).

The amount of Pournaras's Allowed Class 2 Claim shall be equal to the amount of cash in the Pershing Account ending in 940 on the date of the Initial Distribution ($279,863.23, as of December 31, 2017) less the face value of his Secured Demand Note ($100,000.00), or approximately $179,863.23.

The amount of the Murphy Claim shall be $0.

The amount of DeAngelis's, Ricciardi's and Riccio's respective Allowed Class 2 Claim shall each be $0.

Holders of Class 2 Claims will be entitled to a Final Distribution in an amount equal to their pro rata share of any Cash remaining in the estate after the liquidation of claims against the estate, and the completion of all other distributions as set forth in this Plan.

Class 2 is Impaired.  Holders of Class 2 Claims are therefore entitled to vote to accept or reject the Plan.

5.03   **Class 3 – Secured Demand Note Claims.**

On the Effective Date, Holders of Class 3 Secured Demand Note Claims will be entitled to a Cash Distribution equal to their pro rata share (based on percentage of total Class 3 Claims) from the Secured Demand Note Fund as part of the Initial Distribution.

The amount of Janine May Sharff's and Kristin May Galvin's respective Allowed Class 3 Claim shall be $125,000 each.

The amount of DeAngelis's Allowed Class 3 Claim shall be $200,000.

11

The amount of Pournaras's, Ricciardi's and Riccio's respective Allowed Class 3 Claim shall each be $100,000.

The Cash distributed to the Holders of Class 3 Claims during the Initial Distribution shall be in full and final satisfaction of such Holders' Secured Demand Note Claims against the Debtor and its estate, provided however, that the Distribution to Holders of Class 3 claims shall not waive or impair the right or ability of Janine May Scharff and/or Kristin May Galvin to pursue claims against Murphy (or his wife) under various guaranty agreements or otherwise, or any rights any other Holders of Class 3 Claims may have against third parties.  Holders of Class 3 Claims shall not be entitled to any portion of the Final Distribution unless all other claims are paid in full with interest.

Class 3 is Impaired.  Holders of Class 3 Claims are therefore entitled to vote to accept or reject the Plan.

5.04    **Class 4 – Equity Interests.**

Holders of Class 4 Equity Interests will not receive any distribution under the Plan.

Class 4 is Impaired but will be deemed to have voted to reject the Plan.

5.05    **Cramdown**.  If any class of Claims fails to accept the Plan in accordance with § 1126(c) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting, impaired Class.

## ARTICLE VI
## PROVISIONS REGARDING RESOLUTION OF CLAIMS
## AND GOVERNING DISTRIBUTIONS UNDER THE PLAN

6.01    **Method of Distributions under the Plan**.

a.    <u>General Provisions; Undeliverable Distributions</u>.    Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Plan Administrator at (a) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on Proofs of Claim filed by such Holder or (b) the last known address of such Holder if no Proof of Claim is filed or if the Plan Administrator has been notified in writing of a change of address.

If any Distribution by the Plan Administrator is returned as undeliverable, the Plan Administrator may, in his discretion, make reasonable efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Plan Administrator deems appropriate, but no Distribution to any such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made to the Holder without interest. Amounts in respect of any undeliverable Distributions made by the Plan Administrator shall be

returned to, and held in trust by, the Plan Administrator until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth in Article 6.01(c) of this Plan. The Plan Administrator shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Plan Administrator Agreement. On or about the time that the Final Distribution is made, the Plan Administrator may make a charitable donation with undistributed funds if, in the reasonable judgment of the Plan Administrator, the cost of calculating and making the Final Distribution of the remaining funds is excessive in relation to the benefits to the Holders of Claims who would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtor.

b.   <u>Minimum Distributions</u>. Notwithstanding anything herein to the contrary, if a Distribution to be made to a Holder of an Allowed Claim would be $10 or less in the aggregate no such Distribution will be made to that Holder unless a request therefor is made in writing to the Plan Administrator no later than twenty (20) days after the Plan Administrator provides written notice that such Holder will not receive a Distribution.

c.   <u>Unclaimed Property</u>. Except with respect to property not Distributed because it is being held in a Disputed Claim Reserve, Distributions that are not claimed by the later of the expiration of six (6) months from the Effective Date or ninety (90) days after the date of a Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Debtor through the Plan Administrator, and the Claims with respect to which those Distributions are made shall be deemed to be automatically disallowed, expunged, discharged and forever barred without further order of the Bankruptcy Court. Nothing contained in the Plan shall require the Plan Administrator to attempt to locate any Holder of an Allowed Claim. All funds or other property that vests or revests in the Debtor through the Plan Administrator pursuant to this Article shall be distributed by the Plan Administrator to the other Holders of Allowed Claims in accordance with the provisions of the Plan or the Plan Administrator Agreement.

d.   <u>Manner of Cash Payments Under the Plan</u>. Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator, or by wire transfer from a domestic bank, at the option of the Plan Administrator.

e.   <u>Time Bar to Cash Payments by Check</u>. Checks issued by the Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article 6.01(e) shall be made directly to the Plan Administrator by the Holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety (90) days after the date of issuance thereof. After that date, all Claims in respect of void checks shall be disallowed, expunged, discharged and forever barred without further order of the Bankruptcy Court and the proceeds of those checks shall revest in the Debtor through Plan Administrator, as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code and be distributed in accordance with the terms of this Plan.

f.       Limitations on Funding of Disputed Claim Reserve. Except as expressly set forth in the Plan, the Debtor and the Plan Administrator shall not have any duty to fund the Disputed Claim Reserve.

g.       Compliance with Tax Requirements. In connection with making Distributions under this Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Plan Administrator may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Plan Administrator to the appropriate authority.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article 6.01(a) of this Plan.

h.       No Payments of Fractional Dollars. Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

i.       Setoff and Recoupment.  Except with respect to claims that are allowed pursuant to Articles 5.02 and 5.03 hereof, the Plan Administrator may, but shall not be required to, set-off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtor or the Estate may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Estate of any right of set-off or recoupment that any of them may have against the Holder of any Claim.

6.02   **Objections to Claims**.  After the Effective Date, Objections to Claims may be made, and Objections to Claims made previous thereto shall be pursued, only by the Plan Administrator.  The deadline for the Plan Administrator to file Objections to Claims shall be the Claims Objection Bar Date, subject to extension by motion to the Bankruptcy Court.

After the Effective Date, the Plan Administrator may settle any Disputed Claims without notice and a hearing (provided however that the Plan Administrator shall not be entitled to settle any claim by or with Murphy, or any relative, affiliate, or representative thereof, to the extent that such settlement impacts the rights or interests of the Mays).

6.03   **Disputed Claim Reserve.**

a.       The Plan Administrator shall reserve for each Disputed Claim at the Maximum Amount.  On the date of any Distribution, the Plan Administrator shall deposit into the Disputed Claim Reserve Cash equal to the amount that would be distributable to all Holders of Disputed

14

Claims in respect of all Distributions made on that date, if such Disputed Claims were Allowed in the respective Maximum Amounts. The Plan Administrator shall maintain the Disputed Claim Reserve in a segregated account and shall keep records as to the applicable amounts reserved in respect of each Disputed Claim.

b.      In the event any Disputed Claim becomes an Allowed Claim, as soon as practicable after the date of allowance, the Plan Administrator shall distribute to the Holder of such Allowed Claim from the Disputed Claim Reserve the aggregate amount of Cash that such Holder would have received through the date of such Distribution in respect of such Disputed Claim as if such Claim had been an Allowed Claim as of the Effective Date.

c.      From time to time as Disputed Claims are Disallowed or Allowed in amounts less than their respective Maximum Amounts, the Cash deposited in the Disputed Claims Reserve that otherwise would have been distributed to the Holders of such Disputed Claims if such Disputed Claims had become Allowed in their respective Maximum Amounts shall be released from and no longer held in the Disputed Claims Reserve and shall be distributed to the extent required in accordance with this Plan.

6.04    **Claims Estimation.**

The Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Plan Administrator previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time concerning any objection to any Claim, including during the pendency of any appeal relating to any such Objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism pursuant to the Plan or approved by the Bankruptcy Court.

6.05    **Disallowance of Claims.**

a.      Except as otherwise agreed in writing and approved by the Bankruptcy Court, any and all proofs of Claim filed after the General Bar Date or the Governmental Bar Date, as applicable, shall be deemed Disallowed and expunged as of the Effective Date without any further notice or action, order or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed.

b.      Any Claims held by Entities from which property is recoverable under Section 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, provided that

such Cause of Action is a Retained Cause of Action, shall be deemed Disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or the Estate through the Plan Administrator.  The Debtor does not believe at the time of filing this Plan that any such claims exist against Holders of Claims anticipated to receive Distributions under the Plan.

6.06    **Adjustment Without Objection.**  Any Claim or Equity Interest that has been paid or satisfied, or any Claim or Equity Interest that has been amended, superseded or Disallowed by Final Order, may be adjusted or expunged on the Claims Register at the direction of the Plan Administrator, as applicable, without an Objection having to be filed and without any further notice, action, order or approval of the Bankruptcy Court.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01    **Assumption or Rejection of Executory Contracts and Unexpired Leases**. Pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, other than as set forth in Article 8.10 hereof, all Executory Contracts and Unexpired Leases that exist between the Debtor and any party that have not been previously assumed pursuant to any order of the Bankruptcy Court shall be deemed rejected on the Effective Date.  The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to §§ 365 and 1123 of the Bankruptcy Code as of the Effective Date.

7.02    **Claims Based on Rejection of Executory Contracts or Unexpired Leases**. Claims created by the rejection of executory contracts and unexpired leases pursuant to Article 7.01 of this Plan, must be filed with the Bankruptcy Court and served on the Plan Administrator no later than thirty (30) days after the Effective Date.  Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Article 7.01 of this Plan for which a Proof of Claim is not timely filed within that time period shall be forever barred from assertion against the Debtor, its Estate, its successors and assigns, or its assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Class 2 - General Unsecured Claims under the Plan and shall be subject to the provisions of Article V of the Plan.

7.03    **Post-Petition Contracts and Leases.**  Contracts and leases entered into after the Petition Date by the Debtor may be performed by the Plan Administrator in the ordinary course of business and in accordance with the terms thereof.  The Debtor does not believe that any such contracts or leases exist.

16

**ARTICLE VIII**
**MEANS FOR IMPLEMENTATION AND**
**EFFECT OF CONFIRMATION OF PLAN**

8.01    **Plan Administrator**.

a.    <u>Plan Administrator Agreement.</u>    The Plan Administrator Agreement shall be executed and delivered by the Debtor and the Plan Administrator.

b.    <u>Appointment</u>.  As of the Effective Date, in addition to any other powers described in this Plan, the powers and duties of the Plan Administrator shall consist of the following:

i.    To make Distributions on account of all Allowed Administrative Expense Claims, Allowed Professional Fees, Allowed Class 2 Claims, and Allowed Class 3 Claims, consistent with the terms of this Plan;

ii.    To retain persons and professionals to assist in carrying out the powers and duties enumerated pursuant to this Plan and/or Plan Administrator Agreement;

iii.    To enter into contracts as necessary to assist in carrying out the powers and duties enumerated pursuant to this Plan and/or Plan Administrator Agreement;

iv.    To pay expenses incurred in carrying out the powers and duties enumerated in pursuant to this Plan and/or Plan Administrator Agreement, including professional fees incurred after the Effective Date;

v.    To open and maintain bank accounts and deposit funds and draw checks and make disbursements in accordance with the Plan and/or Plan Administrator Agreement;

vi.    To effectuate any of the applicable provisions in this Plan and the Plan Administrator Agreement; and

vii.    At the appropriate time, to ask the Bankruptcy Court to enter the final decree.

8.02    **Vesting of Assets**.  Except as otherwise provided in the Plan, and except for rights and obligations set forth in the Plan, on the Effective Date, all property comprising the Estate (including Causes of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall remain vested in the Debtor through the Plan Administrator as of the Effective Date, free and clear of all Claims, Liens, and interests.  As of and following the Effective Date, the Plan Administrator may settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

17

8.03    **Plan Administrator Reserve.** As of the Effective Date, the Plan Administrator shall create a reserve account in the amount of Forty Thousand Dollars ($40,000) prior to making the Initial Distribution, from which the Plan Administrator shall pay the costs of winding up the affairs of the Debtor, including without limitation, the Plan Administrator's fees, costs and expenses, and the fees of any professionals retained by the Plan Administrator to assist him in performing his remaining duties. If after all necessary fees, expenses and obligations of the Plan Administrator are paid in full, any funds remain with the Plan Administrator, such funds shall revert to the general Estate and shall be distributed in accordance with the terms of this Plan.

8.04    **Professional Fee Reserve.** As of the Effective Date, the Plan Administrator shall create a reserve account in the amount of Two Hundred Twenty-Five Thousand Dollars ($225,000) prior to making the Initial Distribution, from which the Plan Administrator shall pay Allowed Professional Fees which accrued prior to the Effective Date but were not paid as of the Effective Date. If after all Allowed Professional Fees are paid in full, any funds remain in the Professional Fee Reserve, such funds shall revert to the general Estate and shall be distributed in accordance with the terms of this Plan.

8.05    **Tax Reserve.** As of the Effective Date, to the extent the Priority Tax Claim filed by New York State, or expected to be filed by New York State, has not been liquidated and Allowed, the Plan Administrator shall create a reserve account in the amount of One Hundred Fifty Thousand Dollars ($150,000) prior to making the Initial Distribution. At such time as the Priority Tax Claim of New York State becomes an Allowed Claim, the Plan Administrator shall make a Distribution from the Tax Reserve in accordance with the terms of Article 3.04 of this Plan. If after all the Allowed amount of New York State's Priority Tax Claim is paid in full, any funds remain in the Tax Reserve, such funds shall revert to the general Estate and shall be distributed by the Plan Administrator in accordance with the terms of this Plan.

8.06    **Secured Demand Note Fund.** As of the Effective Date, the Plan Administrator shall segregate $50,000 of Cash to create the Secured Demand Note Fund, from which the Plan Administrator shall make Distributions to Holders of Class 3 Claims in accordance with the terms of Article 5.03 of this Plan.

8.07    **Corporate Existence of the Debtor.** As of the Effective Date, the Debtor shall maintain its good standing as a general partnership under the laws of the state of its formation until and unless appropriate documents are filed dissolving the Debtor following consummation of the Plan. The Plan Administrator will take all reasonable and necessary steps to dissolve the Debtor upon the filing and acceptance of all necessary tax returns and the completion of all obligations of the Debtor under this Plan.

8.08    **Insurance Preservation**. On the Effective Date, the Plan Administrator shall assume all insurance policies issued or providing coverage at any time to the Debtor, its Affiliates or predecessors of any of the foregoing and all agreements related thereto, as may be amended or modified. Nothing in this Plan, the Disclosure Statement, the Confirmation Order or otherwise shall diminish or impair the validity or enforceability of any insurance policies that may cover or backstop Claims against the Debtor or its employees, officers, directors, members, shareholders, or any other Person.

8.09    **Preservation of Setoff Rights**.  On and after the Effective Date, rights of set-off pursuant to Bankruptcy Code § 553 shall be preserved.  After the Effective Date, such set-off may be exercised pursuant to agreement of the Plan Administrator, on the one hand, and the affected Creditor, on the other hand.  Any disputes regarding the right of set-off shall be determined upon motion before the Bankruptcy Court.

## ARTICLE IX
## EFFECTIVENESS OF THE PLAN

9.01    **Conditions Precedent to Confirmation**.

a.    The following conditions must be satisfied on or before the Confirmation Date:

i.    The Court shall have entered the Disclosure Statement Order; and

ii.    The entry of the Confirmation Order shall be in form and substance reasonably satisfactory to the Debtor and shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; and (iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud.

9.02    **Conditions Precedent to Effectiveness**.

a.    The Plan shall not become effective unless and until the following have been satisfied:

i.    The Confirmation Order has become a Final Order;

ii.    The Plan Administrator Agreement shall have been entered into; and

iii.    There shall be no stay or injunction in effect with respect to the Confirmation Order.

b.    Notwithstanding the foregoing, the Debtor reserves, in its sole discretion, the right to waive the occurrence of any condition precedent to the Effective Date or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

c.    Simultaneous Transactions.  Except as otherwise expressly set forth in the Plan, the Confirmation Order or a written agreement by the Debtor, each action to be taken on the Effective Date shall be deemed to occur simultaneously as part of a single transaction.

## ARTICLE X
## RELEASE, INJUNCTIONS AND RELATED PROVISIONS

10.01    Intentionally left blank.

10.02    **Releases by the Debtor.**

**a.    Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation the satisfaction and elimination of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise, the Debtor hereby provides a full release, waiver and discharge to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtor) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place during the period of the Petition Date through the Effective Date in any way related to the Debtor's Chapter 11 Case, including, without limitation, those that the Debtor would have been legally entitled to assert or that any Holder of a Claim or other Entity would have been legally entitled to assert for or on behalf of any of the Debtor or Estate and further including those in any way related to the Chapter 11 Case or the Plan; provided, however, that the foregoing provisions of this Article 10.02 shall have no effect on the liability of any Releasee that results from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct; provided further that nothing contained in this Article 10.02, or anything else in this Plan, shall be or shall be deemed a release or compromise of any liability of the Debtor's general partner.**

**b.    Exculpation and Limitation of Liability. Notwithstanding anything contained in the Plan to the contrary, and to the extent provided by 1125)(e), the Exculpated Parties shall neither have, nor incur any liability to any Entity for any Exculpated Claim; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct.**

10.03    For the avoidance of doubt, nothing in this Plan does or shall be deemed to release the general partner of the Debtor from his or its obligations for the debts of the Debtor, and nothing in this Plan to the contrary shall release, waive, or otherwise impair the rights and claims of Cary May, Janine May Scharff or Kristin May Galvin against Murphy or other third parties that may be responsible for payment of their respective Claims against the Debtor under certain guaranties or otherwise.

10.04    **Entry of Confirmation Order.    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in Article 10.02 and 10.03 of this Plan pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and**

compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtor and all Holders of Claims; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the Debtor.

10.05    **Injunction.    Except as otherwise expressly provided for in the Plan or pursuant to obligations set forth in the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim from:**

   i.   commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, its successors and assigns, and any of its assets and properties;

   ii.   enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, its successors and assigns, and any of its assets and properties;

   iii.   creating, perfecting or enforcing any encumbrance of any kind against the Debtor, its successors and assigns, and any of its assets and properties; or

   iv.   asserting any right of set-off or subrogation of any kind against any obligation due from the Debtor, or its successors and assigns, or against any of its assets and properties, except to the extent a right to set-off or subrogation is asserted with respect to a timely filed proof of claim or is otherwise permitted by the terms of this Plan.

10.06    **From and after the Effective Date, all Releasing Parties are permanently enjoined from commencing or continuing in any manner against the Releasees, their successors and assigns, and any of their assets and properties, any suit, action or other proceeding, on account of or respecting any claim, demand, liability, obligation, debt, right, cause of action, interest or remedy based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place during the period of the Petition Date through the Effective Date in any way related to the Debtor's Chapter 11 Case, including, without limitation, those that the Debtor would have been legally entitled to assert or that any Holder of a Claim or other Entity would have been legally entitled to assert for or on behalf of any of the Debtor or Estate and further including those in any way related to the Chapter 11 Case or the Plan;  provided, however, that this Plan shall have no effect on the liability of any Releasee that results from any act or omission that is determined in a Final Order to have constituted fraud, gross negligence or willful misconduct; provided further that nothing contained in this Plan, shall be or shall be deemed a release or compromise of any liability of the Debtor's general partner.**

10.07    **Releases of Liens.**  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estate shall be fully released and discharged and all of the right, title and interest of any

holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtor through the Plan Administrator.

      10.08  **Preservation of Causes of Action.**

    a.    <u>Vesting of Causes of Action</u>.

        i.    Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that the Debtor may hold against any Entity shall vest upon the Effective Date shall continue to be held by the Debtor through Plan Administrator.  Retained Causes of Action include, but are not limited to, (i) preference, fraudulent transfer and other avoidance claims pursuant to chapter 5 of the Bankruptcy Code and state law counterparts and (ii) state and common law claims for breach of fiduciary duty, as against former directors or officers of the Debtor for action or inactions occurring prior to the Petition Date.  These claims shall be preserved.

        ii.    Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Plan Administrator shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Retained Causes of Action without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Case.

    b.    <u>Preservation of All Retained Causes of Action Not Expressly Settled or Released</u>.

        i.    Unless a Retained Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Debtor through the Plan Administrator expressly reserves such Retained Cause of Action for later adjudication by (including, without limitation, Retained Causes of Action of which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Retained Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).  In addition, the Debtor expressly reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

22

ii.     Subject to the immediately preceding paragraph, except for the Releasees, who are each the beneficiary of releases under this Plan, any Entity to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor, should assume that any such obligation, transfer or transaction may be reviewed by the Plan Administrator subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case; (ii) the Debtor has objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtor has objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtor as disputed, contingent or unliquidated.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

11.01  **Bankruptcy Court Jurisdiction**.  The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of and related to the Chapter 11 Case and this Plan pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

b.     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

c.     resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtor is party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article 12.05 of this Plan, adding executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed;

d.     ensure that Distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of the Plan;

e.     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including, without limitation, Retained Causes of Action, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or

instituted by the Plan Administrator after the Effective Date, provided, however, that the Plan Administrator shall reserve the right to commence actions in all appropriate jurisdictions;

      f.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplement or the Disclosure Statement;

      g.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

      h.      issue and enforce injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

      i.      resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article X, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

      j.      enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

      k.      resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Administrator Agreement or any contract, instrument, release, indenture or other agreement or document adopted or executed in connection with the Plan or the Disclosure Statement; and

      l.      enter an order and/or the decree contemplated in Fed. R. Bankr. P. 3022 closing the Chapter 11 Case.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

      12.01  **Effectuating Documents and Further Transactions**.  The Plan Administrator is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities pursuant to the Plan.

      12.02  **Aid in Implementation of Plan**.  The Bankruptcy Court may direct the Debtor through the Plan Administrator and any other necessary party to execute or deliver or to join the execution or delivery of any instrument required to effect the Plan, and to perform any other act necessary to consummate the Plan.

      12.03  **Post-Effective Date Fees and Expenses**.  From and after the Effective Date, in the ordinary course of business and without the necessity for any approval by the Bankruptcy

Court, the reasonable fees and expenses of professional persons incurred after the Effective Date by the Debtor through the Plan Administrator shall be paid by the Plan Administrator from the Plan Administrator Reserve, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

12.04   **Post-Effective Date Statutory Fees**.  All fees and interest payable pursuant to § 1930 of Title 28 of the United States Code and §  3717 of Title 31 of the United States Code incurred after the Effective Date shall be paid by the Plan Administrator from the Plan Administrator Reserve in accordance with applicable law.  The Plan Administrator shall submit post-confirmation reports in compliance with applicable law.

12.05   **Amendment or Modification of the Plan**.   Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of §§ 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with § 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan as altered, amended, or modified satisfies the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under § 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications.  A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

12.06   **Severability**.  In the event that the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness, or unenforceability of any such provision shall not limit or affect the enforceability and operative effect of any other provision of the Plan.

12.07   **Revocation or Withdrawal of the Plan**.  The Debtor shall have the right to revoke or withdraw the Plan before the Confirmation Date.  If the Debtor revokes or withdraws the Plan before the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

12.08   **Allocation of Plan Distributions Between Principal and Interest**.  To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

12.09   **Binding Effect**.  The Plan shall be binding upon and inure to the benefit of the Debtor and the Holders of Claims and Equity Interests and their respective successors and assigns.

12.10   **Reservation of Rights.**  Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Equity Interests or other parties in interest; or (2) any Holder of a Claim or other party in interest prior to the Effective Date.

12.11   **Section 1146 Exemption.**  Pursuant to Section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer pursuant hereto shall not be taxed under any law imposing any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

12.12   **Section 1125(e) Good Faith Compliance.**  The Debtor and its Representatives, shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

12.13   **Successors and Assigns.**  The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

12.14   **Preservation of Records**.  The Plan Administrator shall preserve for the benefit of the Estate, all documents and files, including electronic data hosted on remote servers that are necessary to the prosecution of the Retained Causes of Action and claims resolution process (the "Retained Information"). After the Effective Date, the Plan Administrator shall preserve the Retained Information until the date that is one (1) year following the closing of the Chapter 11 Case. On the Effective Date, the Plan Administrator shall be permitted to abandon (with or without destruction), any information that is not Retained Information.

12.15   **Notices**.  To be effective, all notices, requests and demands to or upon the Debtor and Plan Administrator shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic mail, when received, addressed as follows:

*If to the Plan Administrator:*

|  |  |  |
|---|---|---|
| Joshua Rizack | With a copy | Klestadt Winters Jureller Southard |
| The Rising Group Consulting, Inc. | to: | & Stevens, LLP |
| 606 Post Road East, 614 |  | 200 West 41st Street, 17th Floor |
| Westport, CT 06880 |  | New York, NY 10036 |
| Email: jrizack@therisinggroup.com |  | Tel: (212) 972-3000 |
|  |  | Attn: Fred Stevens |
|  |  | Brendan M. Scott |
|  |  | Email: fstevens@klestadt.com |
|  |  | bscott@klestadt.com |

*If to the Debtor:*

|  |  |  |
|---|---|---|
| Murphy & Durieu, L.P. | With a copy | Klestadt Winters Jureller Southard |
| c/o The Rising Group | to: | & Stevens, LLP |
| 606 Post Road East, 614 |  | 200 West 41st Street, 17th Floor |
| Westport, CT 06880 |  | New York, NY 10036 |
| Email: jrizack@therisinggroup.com |  | Tel: (212) 972-3000 |
|  |  | Attn: Fred Stevens |
|  |  | Brendan M. Scott |
|  |  | Email: fstevens@klestadt.com |
|  |  | bscott@klestadt.com |

12.16    **Governing Law**.  Except to the extent the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law of such jurisdiction.

Dated: New York, New York
    March 22, 2018

MURPHY & DURIEU, L.P.

Debtor and Debtor-in-Possession

By:____*/s/ Joshua Rizack*_____
    Joshua Rizack, Chief Restructuring Officer

27

APPROVED AS TO FORM:

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**

By: _/s/ Fred Stevens_
    Fred Stevens
    Brendan M. Scott
    200 West 41st Street, 17th Floor
    New York, New York 10036-7203
    Telephone: (212) 972-3000
    Facsimile: (212) 972-2245

_Counsel for the Debtor and_
_Debtor in Possession_